# FORCHELLI, CURTO, CROWE, DEEGAN, SCHWARTZ, MINEO & COHN, LLP

COUNSELORS AT LAW

330 OLD COUNTRY ROAD
P.O. BOX 31
MINEOLA, NEW YORK 11501
TELEPHONE: (516) 248-1700
FACSIMILE: (516) 248-1729

WEBSITE:WWW.FORCHELLILAW.COM

**RUSSELL G. TISMAN**
PARTNER
RTISMAN@FORCHELLILAW.COM

July 23, 2009

MELVILLE, NEW YORK
BY APPOINTMENT ONLY

BY ECF
Hon. Roslynn R. Mauskopf
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Hagstrand v. Freeman Decorating Services, Inc.
              09 CV 1258 (RMM)(MDG)

Dear Judge Mauskopf:

        We represent defendant Freeman Decorating Services, Inc. ("Freeman"). I write to request a pre-motion conference preliminary to a summary judgment motion by Freeman on the grounds that plaintiff David Hagstrand was a special employee of Freeman, and the worker's compensation benefits he received in connection with his work-related accident are his exclusive remedy. Magistrate Judge Go, at the Rule 16 Conference, established an expedited schedule for discovery concerning this issue preliminary to an early summary judgment motion. In an effort to save expense, I also ask to defer discovery on damages and medical issues, including independent medical examinations of plaintiff, pending the outcome of this motion.

        Hagstrand was a union carpenter employed by New York Convention Center Operating Corp. ("NYCCOC"), the municipal corporation which operates the Jacob K. Javits Center ("Javits Center") for the State of New York. Freeman is a services contractor which is hired by organizers of trade shows to physically produce events at the Javits Center and other venues. Hagstrand worked exclusively as a "show carpenter", assigned by NYCCOC to Freeman, or other contractors, to assist them in the production of trade shows at the Javits Center.

        Since July, 1995, NYCCOC has required all contractors, including Freeman, to obtain carpenters and teamsters from NYCCOC. Prior to 1995 at the Javits Center carpenters, like Mr. Hagstrand, were employed directly by Freeman for trade show production. Freeman continues to directly employ trade show carpenters through its collective bargaining relationship with the N.Y. District Council of Carpenters at other venues. In both instances, the carpenters are supervised by Freeman supervisors, and are assigned work by Freeman, which Freeman is contractually obligated to provide to show sponsors or exhibitors.

FORCHELLI, CURTO, CROWE, DEEGAN, SCHWARTZ, MINEO, & COHN, LLP
COUNSELORS AT LAW

Hon. Roslynn R. Mauskopf
July 23, 2009
Page 2

This relationship has been examined repeatedly by State and Federal courts in New York, which routinely have held that NYCCOC-employed show carpenters and teamsters are specially employed by Freeman (or other contractors) and that worker's compensation provides their exclusive remedy. See e.g., Crowley v. Larkin, Pluznick, Inc., 2001 WL 210496 (E.D.N.Y. 2001) (Gershon, J.); Giordano v. Freeman Decorating Co., 2000 WL 323256 (S.D.N.Y. 2000); Quinland v. Freeman Decorating, 160 F.Supp.2d 681 (S.D.N.Y. 2001); Giannola v. Shepard Exposition Services, Slip op., (Sup. Ct. N.Y. Co. April 4, 2007); DePascale v. Sulzer US Industries Holding, Inc., Slip op. (Sup. Ct. Kings Co. August 15, 2004).

A special employee is a "borrowed servant" who is assigned by his employer to work for another under the supervision and control of the special employer. All of Hagstrand's work at the Javits Center was on assignment to contractors, such as Freeman, where he worked under the contractors' supervisors for trade shows they were producing. He was not a "house" carpenter, maintaining the Javits Center itself. On the day of his incident, Mr. Hagstrand signed in with NYCCOC, and was sent to work for Freeman. He signed and gave Freeman his time card.[1] Freeman told Hagstrand where to report, who would supervise him, and the work he was to perform. Hagstrand concedes that his work was assigned and supervised by Freeman, not by NYCCOC. Hagstrand was injured attempting to move a Freeman-owned registration table erected from MIS [modular interlocking display] components. He was using a Freeman-supplied furniture dolly when the display fell during the move out of the Restaurant Show. Union carpenters provide their own basic tools. However, any equipment they need, or specialized tools, including ladders, forklifts, dollies, etc., are provided by Freeman for use by show carpenters and teamsters. Hagstrand conceded that, on the day of his incident, he had received no instructions from NYCCOC other than the initial instruction in the labor hall to report to Freeman and work under Freeman's supervision.

Hagstrand's work assignment was in furtherance of Freeman's contractual obligation to Reed Expositions, Inc. ("Reed"), the sponsor of the Restaurant Show, which had retained Freeman as its official services contractor to set up and take down that event. Freeman, not NYCCOC, would have borne the consequences if the Restaurant Show had not been timely taken down.

Hagstrand is paid directly by NYCCOC. Freeman, however, pre-funds NYCCOC's payroll account with the projected costs for NYCCOC-supplied labor, so that NYCCOC has funds available to pay show carpenters, like Hagstrand, who are assigned to Freeman. The rate paid to NYCCOC is a function of salary, benefit and indirect labor costs,

---

[1] Hagstrand's time card was preprinted with the Freeman acronym (FDC [Freeman Decorating Co.]), because he was assigned to work for Freeman for that day.

FORCHELLI, CURTO, CROWE, DEEGAN, SCHWARTZ, MINEO, & COHN, LLP
COUNSELORS AT LAW

Hon. Roslynn R. Mauskopf
July 23, 2009
Page 3

including the pro rata cost of worker's compensation coverage, plus the indirect proportionate cost for NYCCOC's administration of show labor.

Hagstrand's worker's compensation benefits have been paid under a policy issued by the State Insurance Fund to NYCCOC which also names Freeman as an alternate employer[2] (along with NYCCOC as a general employer) through a blanket endorsement. Consequently, Hagstrand's worker's compensation benefits are defrayed through coverage insuring Freeman. This arrangement was authorized by NYCCOC in recognition of the special employment relationship of contractors, like Freeman, with NYCCOC's trade show carpenters and teamsters.

These facts bring Hagstrand's claim squarely within the facts of the above cited cases where courts in the Eastern and Southern Districts of New York, and Supreme Court, New York and Kings Counties all have granted summary judgment holding that the relationship between NYCCOC-employed carpenters and teamsters who are assigned to Freeman, or other contractors, in connection with their work producing, and/or taking down, trade shows at the Javits Center is a special employment relationship, and that worker's compensation provides their exclusive remedy against the special employer.

Finally, due to medical issues I am not able to drive, or use most public transportation. Under the circumstances, I request that the conference be conducted telephonically.

Very truly yours,

FORCHELLI, CURTO, CROWE, DEEGAN,
SCHWARTZ, MINEO & COHN, LLP

Russell G. Tisman

RGT/ms

File No. 28163
TM\Mauskopf.07.15.09

---

[2] Freeman pays its pro rata share of this coverage as a component of the labor rate charged by NYCCOC for the carpenters and teamsters.